## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

DANTE SMITH,

      Plaintiff,

      v.

THE CITY OF CHICAGO, et al.,

      Defendants.

Case No. 21-cv-890

Judge John Robert Blakey

### MEMORANDUM OPINION AND ORDER

Plaintiff Dante Smith brings claims against the City of Chicago and Chicago Police Officers Marvin Bonnstetter, Michael Bertini, Wayne Frano, Jr., Nicholas Hertko, Ivan Ramos, Kevin Garcia, Michael Napoli, and Salvatore Reina (collectively, the "Officer Defendants") under § 1983 for violations of his Fourth Amendment rights during the execution of a search warrant. He asserts a *Monell* claim against the City (Count I) and sues the Officer Defendants for unlawful search (Count II), false arrest (Count III), and excessive force (Count IV). The Officer Defendants now seek summary judgment on the false arrest and excessive force claims (Counts III and IV), [105]. For the reasons explained below, the Court grants in part, and denies in part, Defendants' motion.

I.    **Background**[1]

On July 1, 2017, Defendant Bonnstetter procured a search warrant for Plaintiff's apartment on the second floor of the building located at 3910 W. Van Buren in Chicago. [143] ¶ 5. The search warrant targeted an individual named Kevin Stewart a/k/a "Kevo" and identified items to be seized, including heroin, drug paraphernalia, records involving drug transactions, and residency documents. *Id.* ¶ 6.

There were seven occupants in the apartment on the evening of July 1, including Plaintiff. *Id.* ¶ 9. Plaintiff, who was in his bedroom at the time, heard a loud noise and moved to the rear of the apartment to look out the window, where he observed a police officer and police cars. *Id.* ¶ 10. Plaintiff then moved to the front of the apartment where he encountered Officer Bonnstetter, the first officer to enter Plaintiff's apartment. *Id.* ¶¶ 11–12. As each of the Defendant Officers entered Plaintiff's apartment, they were approximately two to three feet from Plaintiff, and Plaintiff testified that each Officer Defendant pointed his firearm at Plaintiff for a few seconds upon entry. *Id.* ¶ 17; [107-6] at 126:21–127:6; 163:24–165:19. Plaintiff also testified that Defendant Frano carried a long, black rifle, which he also pointed at Plaintiff's chest and head for several seconds. [147] ¶ 33. Defendants dispute that any officer pointed a firearm at Plaintiff or any other occupant of the apartment. [147] ¶¶ 24, 30–32.

---

[1] The Court draws these facts from the parties' statements of material facts, responses thereto, and cited exhibits. [107], [143], [147].

Plaintiff testified that, as the Defendant Officers entered the apartment, they shouted, "get down, don't move," [107-6] at 94:5–6, and that Defendant Garcia grabbed Plaintiff's arm, twisted it behind his back, and handcuffed him. *Id.* at 94:7–9. Defendant Garcia then pushed Plaintiff into the dining room and put him on the floor. [143] ¶ 38; [147] ¶ 36; [107-6] at 94:9–14.[2]

Plaintiff testified that Officer Garcia placed the handcuffs on Plaintiff's wrists so tightly that they caused pain, broke the skin, and gave Plaintiff abrasions on his wrists. [147] ¶ 36. Plaintiff remained handcuffed while the Defendant Officers finished searching the apartment. *Id.* ¶ 37. Officer Garcia had no recollection of handcuffing Plaintiff or anyone else during the execution of the search warrant. *Id.* ¶ 39. None of the Defendant Officers recall whether Plaintiff remained handcuffed throughout the entire time they searched his apartment or who, if any of them, handcuffed Plaintiff. *Id.* ¶ 16.

During execution of the search warrant, Plaintiff complied with the Defendant Officers' orders, did not resist the Defendant Officers, and presented no safety threat to the officers on the scene. [147] ¶ 28. Plaintiff testified that, at one point, while he was seated on the floor by the wall, Defendant Napoli put his firearm to Plaintiff's head and said, "if you want to keep hooping, don't f***ing move or I'll blow your brains

---

[2] In the Second Amended Complaint, Plaintiff alleged that Defendant Ramos twisted Plaintiff's arm and handcuffed him. [143] ¶ 35; [90] ¶ 64. In response to Defendants' interrogatories, Plaintiff represented that Defendant Napoli twisted his arm and handcuffed him. [143] ¶ 37; [107-14] ¶ 11. But in his more recent March 9, 2023 deposition, Plaintiff testified that Defendant Garcia twisted his arm and handcuffed him. [107-6] at 93:17–94:14.

out." *Id.* ¶ 41; [107-6] at 103:5–15.[3]  Plaintiff testified that Officer Napoli continued to stand next to him with his pistol pointed at Plaintiff's chest, torso, and legs from approximately two to three feet away for approximately 10 to 15 minutes.  [147] ¶ 42; [107-6] at 118:2–5.  According to Plaintiff, Defendant Ramos witnessed his encounter with Defendant Napoli, [107-6] at 117:13–22, 118:14–20, but no other Defendant touched him with a firearm or verbally threatened him.  *Id.* at 119:4–120:21.  Officer Napoli denied touching Plaintiff with his firearm and threatening him.  [147] ¶ 42.

Plaintiff remained handcuffed for approximately one to two hours, throughout the officers' search of the apartment.  [143] ¶ 46.  Plaintiff did not tell the officers at the time that his handcuffs were too tight or otherwise uncomfortable; nor did he complain of injury or request medical attention during the incident.  *Id.* ¶¶ 48–49; [107-6] at 135:4–11, 159:21–160:6.  Plaintiff's left arm and wrist were sore for several days following the incident.  *Id.* ¶ 47.  After the search of Plaintiff's residence, the Defendant Officers recovered various types of firearm ammunition and bags containing a substance the officers suspected to be heroin.  *Id.* ¶ 50.

On February 17, 2021, Plaintiff filed a complaint against the City of Chicago and the Officer Defendants, [1], which he amended on June 4, 2021, [28], and September 16, 2022, [90].  In the operative complaint, Plaintiff asserts a § 1983 claim against the City of Chicago under *Monell* (Count I) and § 1983 claims against the Officer Defendants for unlawful search (Count II), false arrest and imprisonment

---

[3] In the Second Amended Complaint, Plaintiff alleged that, on information and belief, Defendant Ramos touched Plaintiff with his firearm and threatened him.  [90] ¶ 65.  In his response to Defendants' discovery requests and at his deposition, Plaintiff clarified that it was Defendant Napoli, not Defendant Ramos, who interacted with Plaintiff.  [143] ¶¶ 36–37; [107-6] at 103:5–15.

(Count III), and excessive force (Count IV).   On July 21, 2022, the Court granted the City of Chicago's motion to bifurcate the *Monell* claim and stay the case as to that claim while the case proceeds against the Officer Defendants.  [87].  This Court also previously granted Defendants' motion to dismiss Count II without prejudice, which Plaintiff has re-pled (making no substantive changes) in the Second Amended Complaint, purportedly to preserve the issue on appeal.  [90] at 33 n.6.  The parties agree the Court dismissed this claim in its prior order, [67], and it is no longer at issue; thus, the Court dismisses Count II with prejudice for the reasons stated in its March 25, 2022 order, [67].

Defendants move for summary judgment on Counts III and IV.  [105].

## II.   Legal Standard

A motion for summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  To withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The Court must construe the record "in the light most favorable to the nonmovant" and avoid the "temptation to decide which party's version of the facts is more likely true."  *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

In resolving a motion for summary judgment, this Court has "one task and one task only: to decide, based on the evidence of record, whether there is any material

dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted). The nonmovant, though, "must do more than raise a metaphysical doubt as to the materials facts. Rather, she must come forward with specific facts showing that there is a *genuine issue for trial.*" *Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000) (citation omitted).

## III. Analysis

The Officer Defendants move for summary judgment on Plaintiff's false arrest claim on the grounds that the officers detained Plaintiff pursuant to a valid search warrant. Further, Defendants argue that the undisputed facts demonstrate that the Officer Defendants did not use excessive force against Plaintiff during the execution of the search warrant, and the doctrine of qualified immunity shields the Officer Defendants from liability. The Court considers Defendants' arguments, in turn, below.

### A. False Arrest / False Imprisonment (Count III)

Plaintiff claims that the Defendant Officers subjected him to a false arrest by placing him in handcuffs while they executed a search warrant of his residence.

While the Fourth Amendment requires searches and seizures to be reasonable, officers executing a search warrant may "take reasonable action to secure the premises and ensure their own safety and the efficacy of the search." *United States v. Jennings*, 544 F.3d 815, 818 (7th Cir. 2008) (quoting *Los Angeles Cnty., Cal v. Rettele*, 550 U.S. 609 (2007)). Thus, the Fourth Amendment grants officers "categorical authority to detain any occupant of the subject premises during the search," *id.* (citing *Muehler v. Mena*, 544 U.S. 93, 98 (2005)), to minimize "the risk of

violence that may erupt when an occupant realizes that a search is underway," *id.* (citing *Michigan v. Summers*, 452 U.S. 692 (1981)).  Further, the Fourth Amendment permits such detentions during the execution of a valid search warrant "because the character of the additional intrusion caused by detention is slight and because the justifications for detention are substantial." *Mena*, 544 U.S. at 98 (citing *Summers*, 452 U.S. at 701–05).  Thus, an individual's detention for the duration of a search is reasonable if officers possessed a valid search warrant for the premises and the individual occupied those premises at the time of the search.  *Id.*

The undisputed facts in this case mirror those in *Mena*.  As in *Mena*, the Defendant Officers here executed a valid warrant to search Plaintiff's apartment, and because Plaintiff resided at that address at the time of the search, the Officer Defendants acted reasonably when they detained Plaintiff for the duration of that search.  *See id.* ("Mena's detention for the duration of the search was reasonable under *Summers* because a warrant existed to search 1363 Patricia Avenue and she was an occupant of that address at the time of the search.").

Plaintiff argues that such detention became unreasonable because it lasted longer than necessary and that, because the warrant did not identify Plaintiff as a suspect, there was no reason for officers to handcuff him.  But, when the warrant identifies a premises, not an individual, "the connection of an occupant to a home alone justifies a detention of that occupant." *Id.* (citing *Summers*, 452 U.S. at 703–04).  Further, the Officer Defendants detained Plaintiff only for the duration of the search, which the parties agree lasted approximately 1.5 to 2 hours.  [143] ¶ 46; *see*

*id.* (finding a "2– to 3–hour detention in handcuffs" for the duration of a search was not unreasonable).

Plaintiff's remaining arguments, which include that the handcuffs caused Plaintiff injury because they were too tight and that the Defendant Officers placed guns in Plaintiff's face and physically assaulted and threatened him, support his excessive force claim, not his unreasonable arrest claim.   As the Seventh Circuit noted, false arrest "and excessive force are unrelated except in forming a sequence"; valid detention "does not justify beating him up, and the beating does not invalidate the arrest." *Lenard v. Argento*, 808 F.2d 1242, 1246 (7th Cir. 1987).   Thus, it "is possible for a police officer to use excessive force to make what is otherwise a legitimate arrest." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 681 (7th Cir. 2007).

The Court grants Defendants' motion for summary judgment as to Count III. The Court addresses Plaintiff's arguments supporting his excessive force claim below.

## B.    Excessive Force

Plaintiff brings an excessive force claim on the grounds that: (1) Officer Garcia handcuffed Plaintiff with such force that he sustained injury; (2) each of the Officer Defendants pointed his firearm at Plaintiff upon entry to the premises; and (3) Officer Napoli touched his firearm to Plaintiff's head and threatened to shoot him while Plaintiff was in handcuffs.

The Court analyzes claims that law enforcement officers used excessive force in the course of a seizure or detention "under the Fourth Amendment and its

'reasonableness' standard." *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The reasonableness standard is an objective one from "the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003) (quoting *Graham*, 490 U.S. at 396–97). And the Court must allow "for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Abdullahi*, 423 F.3d at 768 (quoting *Graham*, 490 U.S. at 396–97).

The Court must consider whether, based upon the "totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Payne*, 337 F.3d at 778 (quoting *Lester v. City of Chicago*, 830 F.2d 706, 713 (7th Cir. 1987)). This inquiry is fact specific and must balance "the intrusion of the individual against the governmental interests at stake." *Id.* Thus, the Court must consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Graham*, 490 U.S. at 396).

### 1.    Plaintiff's Handcuffs and Resulting Injuries

Plaintiff first argues that, when Defendant Garcia placed him in handcuffs, he tightened them to the point they broke Plaintiff's skin and caused him pain for several days after the incident.

Like any excessive force claim, the Court analyzes Plaintiff's argument under "the Fourth Amendment's reasonableness standard," which considers a particular use of force "from the perspective of a reasonable officer on a scene…in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Tibbs v. City of Chicago*, 469 F.3d 661, 665 (7th Cir. 2006) (citing *Graham*, 490 U.S. at 396–97).

While the Seventh Circuit has "recognized excessive force claims based upon overly tight handcuffs," *id.*, those cases each had particular facts and circumstances markedly different from the circumstances described by Plaintiff. For example, in *Payne v. Pauley*, the plaintiff complained to officers that her handcuffs were too tight, experienced numbness in her wrist and fingers, sought treatment at the emergency room, and underwent two surgical procedures due to the arrest, which left her unable to work for years. 337 F.3d 767, 774–75 (7th Cir. 2003); *see also Lester v. City of Chicago*, 830 F.2d 706 (officers kneed plaintiff in the back, dragged her down the hallway, and handcuffed her tightly causing scratches and bruises); *Herzog v. Village of Winnetka, Ill.*, 309 F.3d 1041, 1043 (7th Cir. 2002) (officers forced a breath screening device in plaintiff's mouth, cracking her tooth, and laughed when she complained her handcuffs were too tight); *Brown v. Village of Evergreen Park*, 2002 WL 31844991, at *4 (N.D. Ill. Dec. 18, 2002) (officers jammed plaintiff's head against hood of car and handcuffed him so tightly it caused nerve damage).

In contrast, the court in *Tibbs* affirmed summary judgment against a plaintiff who complained "only once" to the officers on the scene that his handcuffs were too

tight "without elaborating on any injury, numbness, or degree of pain." 469 F.3d at 666. Further, the plaintiff remained in handcuffs for only twenty-five to thirty minutes, and his only symptoms included redness on his wrists for which he never sought medical care. *Id.* The Seventh Circuit noted that in cases denying summary judgment, such as *Herzog* and *Lester*, "plaintiffs presented evidence they had suffered numerous additional injuries," and plaintiff cited "no cases in which any court has permitted a plaintiff to reach a jury based on such mild allegations." *Id.; see also Sow v. Fortville Police Dept.*, 636 F.2d 293, 304 (7th Cir. 2011) (plaintiff only complained the handcuffs were too tight once, never complained of injury at the scene, and sought no treatment for injury).

Plaintiff's testimony describes circumstances more similar to *Tibbs* and *Sow* than the other Seventh Circuit excessive force cases. Like the plaintiff in *Tibbs*, Plaintiff never complained to officers that his handcuffs were too tight or that they caused him any injury. [143] ¶ 48–49; [107-6] at 135:4–11. He testified that he suffered abrasions, and his wrists were sore for several days, [147] ¶ 36; [107-6] at 134:2–23, but he identified no other injuries and testified that he never sought medical care after the incident, [107-6] at 96:16–20, 143:6–8.

Based upon these "mild allegations," no reasonable jury could find that the force employed by the Defendant Officers to handcuff Plaintiff violated his Fourth Amendment rights.

11

### 2. Officers' Guns Pointed at Plaintiff's Face

Defendants also argue that the Defendant Officers' briefly pointing their firearms at Plaintiff when they first entered his apartment to effectuate a search warrant cannot constitute excessive force.

The Supreme Court has acknowledged that officers do not violate the Fourth Amendment when they "execute a valid warrant and act in a reasonable manner to protect themselves from harm." *Los Angeles Cnty., California v. Rettele*, 550 U.S. 609, 615 (2007). If there is "reason to fear danger, based on factors like the nature of the crime, the threat to safety, and the resistance of the suspect, police officers may have cause to point their guns at citizens." *Johnson v. Gullickson*, No. 22-1016, 2022 WL 2387350, at *2 (7th Cir. July 1, 2022) (citing *Baird v. Renbarger*, 576 F.3d 340, 346–47 (7th Cir. 2009)). Thus, "the action of a police officer in pointing a gun at a person is not in and of itself, actionable." *Wilkins v. May*, 872 F.2d 190, 194 (7th Cir. 1989); *see also Simmons v. City of Chicago, Illinois*, 2017 WL 635144, at *7 (N.D. Ill. Feb. 16, 2017) (police may detain an individual found at search warrant premises, including by "entering the residence with guns drawn, forcing a show of hands, and detaining him").

While Defendants dispute that any Defendant Officer pointed his firearm at Plaintiff, [147] ¶¶ 24, 30, 32–36, 43–44, Plaintiff testified that the Officer Defendants had their guns drawn upon entry and, as each Defendant Officer entered the apartment, he pointed his firearm at Plaintiff. [107-6] at 126:21–127:6 ("They came in. They aimed their weapons at us. All the cops, they all aimed them at us."). But

12

Plaintiff also testified that each Defendant Officer only pointed his gun at Plaintiff for "a few seconds" and that each encounter was "quick." *See* [107-6] at 163:10–19 (Officer Bonstetter); 163:15–19 (Officer Frano); 163:20–24 (Officer Ramos); 164:5–9 (Officer Garcia); 163:8–18 (Officer Bertini). Further, Plaintiff testified that each of the Defendant Officers only continued pointing their firearms at Plaintiff until they handcuffed the individuals at the scene. *See* [107-6] at 175:8–15 ("Q: And for about how long did the other officers point their firearms at you, each one of them? A: It was fast…A few seconds. A few seconds and then they started to, like, handcuff everybody.").

Based upon Plaintiff's testimony, the Officer Defendants acted reasonably by drawing their firearms to enter a residence in search of evidence related to drug crimes. *See Johnson*, 2022 WL 2387350, at *2 (citing *Baird*, 576 F.3d at 344) ("Drug trafficking is a crime often associated with violence."). Further, like the officers in *Johnson*, the Defendants only pointed their guns at Plaintiff briefly (and, based upon Plaintiff's testimony, for a period of time much shorter than the five minutes in *Johnson*) and only until the individuals on the premises had been secured in handcuffs.[4] *Id*. And, with the exception of the interaction with Defendant Napoli, which the Court addresses below, none of the Officer Defendants' firearms made

---

[4] Plaintiff's mother, Melvina Smtih, who resided at the apartment at the time of the search, testified that it could have been up to five minutes that the officers pointed their weapons at Plaintiff. *See* [143] ¶¶ 12–16, 18–26, 44–45; [143-1] at 104:16–22. Even if the Court, drawing all reasonable inferences in Plaintiff's favor, credits Ms. Smith's testimony over Plaintiff's, pointing a firearm at an individual for five minutes while securing a premises during a search warrant is not, on its own, sufficient to support a claim for excessive force. *See Johnson*, 2022 WL 2387350, at *2 (affirming summary judgment where "two officers pointed guns at Johnson for about five minutes—only from the time they arrived until he was secured in handcuffs").

contact with Plaintiff. [143] ¶ 17; *see also Walker v. Weatherspoon*, No. 12-cv-08571, 2017 WL 3521417, at *7 (N.D. Ill. Aug. 15, 2017) ("Once it was established that Walker was going to come out of the room and cooperate with the search, none of the Defendant Officers pointed any weapons at her, and at no time did any of the weapons make physical contact with Walker. Considering all of the circumstances present— and the brief amount of time during which the gun may have been pointed at Walker—the evidence before the Court is not sufficient to create a genuine issue of material fact as to whether excessive force was used.").

Thus, based upon Plaintiff's own testimony, the Officer Defendants pointed their firearms at him when they first entered the apartment from approximately two to three feet away from Plaintiff for only a "few seconds" and, as soon as Plaintiff and the other individuals in the apartment had been secured, the officers no longer pointed their firearms at Plaintiff. Drawing all inferences in Plaintiff's favor, Plaintiff has failed to identify a genuine issue of material fact that would support a finding of excessive force based upon the officers' pointing their guns at Plaintiff upon entry into his apartment.

### 3. Officer Napoli's Gun Pointed at Plaintiff while Handcuffed

Plaintiff also brings an excessive force claim based upon his interaction with Officer Napoli during the execution of the search warrant.

Plaintiff testified that, when he was seated on the floor of the dining room, Officer Napoli walked over to Plaintiff, put his gun to Plaintiff's head and told him, "If you want to keep hooping, don't f***ing move [or] I blow your brains out." [107-6]

at 103:5–15.  Plaintiff, who was 16 at the time, was handcuffed when Officer Napoli approached him, and Officer Napoli continued pointing his gun at Plaintiff for approximately 10 to 15 minutes after he threatened to shoot Plaintiff.  *Id.* at 118:2–5.  Officer Napoli denies that he touched Plaintiff with his firearm and denies that he threatened to shoot Plaintiff.  [107-9] at 255:2–12.

Although Defendant Napoli denies threatening Plaintiff with his firearm, at this stage, the Court must draw all reasonable inferences in Plaintiff's favor, and holding a firearm to a minor's head for 10–15 minutes, while the minor is handcuffed and secured, and threatening to pull the trigger, constitutes conduct that a reasonable jury could find "shocks the conscience" in support of a sufficient excessive force claim.  *McDonald v. Haskins*, 966 F.2d 292, 294 (7th Cir. 1992) (quoting *Black v. Stephens*, 662 F.2d 181, 189 (3d Cir. 1981)).

In *McDonald*, the officer held a gun to the plaintiff's head and threatened to pull the trigger despite the plaintiff (a nine-year-old child) posing no risk or threat to the officer or anyone else at the scene.  *Id.*  Finding that such facts "are the very ingredients relevant to an excessive force inquiry," the Seventh Circuit agreed that "it would be objectively unreasonable" for the officer, "in the alleged absence of any danger, to place his gun to the head of a young child and threaten to shoot."  *Id.*

Similarly, in *Jacobs v. City of Chicago*, the Seventh Circuit found it "clearly unreasonable for the Defendant Officers to have pointed a loaded weapon at Jacobs for an extended period of time when they allegedly had no reason to suspect that he was a dangerous criminal, or indeed that he had committed any crime at all, Jacobs

was unarmed, and when Jacobs had done nothing either to attempt to evade the officers or interfere with the execution of their duties." 215 F.3d 758, 774 (7th Cir. 2000).

So too here. Plaintiff, a minor at the time of the search who remained handcuffed and secured for its duration, posed no risk to officers at that time, cooperated with their orders, and made no attempt to evade the officers or interfere with the search. [147] ¶¶ 27–28. The Officer Defendants executed a valid search warrant for the premises, not for Plaintiff, and had no other reason to suspect Plaintiff posed a danger while handcuffed. [147] ¶ 5. Thus, considering the "(1) severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others; and (3) whether he is actively resisting arrest or attempting to evade arrest by flight," *Baird*, 576 F.3d at 344 (quoting *Graham*, 490 U.S. at 396), a material dispute of fact exists as to whether Officer Napoli employed excessive force by pointing his gun at Plaintiff's head and threatening to shoot him under the circumstances presented.

Defendants argue that Plaintiff's excessive force claim against Defendant Napoli must fail because he alleged, in the Second Amended Complaint, that it was Defendant Ramos who held the gun to his head and told him he would pull the trigger. [106] at 10–11. According to Defendants, this allegation constitutes a binding judicial

16

admission, and Plaintiff is now prohibited from arguing that a different Defendant (Officer Napoli) held the gun to his head.

While Defendants are correct that factual statements made in the pleadings can constitute judicial admissions, such statements must be "deliberate, clear and unambiguous." *Wells v. Coker*, 707 F.3d 756, 760 (7th Cir. 2013) (quoting *Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 872 (7th Cir. 2010)); *see also Medcom Holdings Co. v. Baxter Travenol Labs., Inc.*, 106 F.3d 1388, 1404 (7th Cir. 1997) (quoting *In re Lefkas Gen. Partners No. 1017*, 153 B.R. 804)) ("Binding judicial admissions are 'any deliberate, clear and unequivocal statement, either written or oral, made in the course of judicial proceedings.'").

In the Second Amended Complaint, Plaintiff alleges that "An officer, on information and belief Defendant officer Ramos, grabbed" Plaintiff, handcuffed him and ordered him to sit down in the dining room. [90] ¶ 64. Plaintiff continues to allege that, "Before sitting him down, officer Ramos physically threatened 16-year-old Dante by holding a gun to his cheek and touching it, telling him, "If you want to keep playing basketball, don't F------ move or I'll blow your brains out!" *Id.* ¶ 65. Read in context, especially in light of the preceding statement that the allegation is made "*on information and belief,*" Plaintiff's statement that Officer Ramos physically threatened him remains ambiguous. Footnote 2 of the Second Amended Complaint provides additional context for the allegations, explicitly acknowledging that Plaintiff still needed discovery regarding the incident. *Id.* at 4 n.2.[5]

---

[5] Footnote 2 states: "Plaintiff needs discovery regarding the incident and all parties in order to name all who have liability. CPD did not provide plaintiff with full identifying information in response to

Based upon the equivocal nature of the statement, the Court declines to find that Plaintiff's identification of Defendant Officer Ramos constitutes a binding judicial admission and denies summary judgment on this ground.[6]

## C.    Qualified Immunity

Defendants also argue that, even if such facts give rise to an excessive force claim, Officer Napoli remains protected by the doctrine of qualified immunity. When a defendant raises the issue of qualified immunity, "the plaintiff bears the burden of showing the existence of the allegedly clearly established constitutional right." *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996). The plaintiff may "do so by (1) pointing to a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) showing that the force was so plainly excessive

---

plaintiff's pre-suit FOIA request. Moreover, officers on the scene were not wearing body cameras, badges and nameplates, refused to provide plaintiff with their names and badge numbers when asked, and the incident occurred nearly four years ago. While defendants provided plaintiff with official CPD file photographs of the officers who executed the search warrant, plaintiff does not have height and weight information for these officers. Moreover, to date plaintiff also cannot discern the identity of the lieutenant who approved the search warrant (because the signature on plaintiff's copy of the warrant is unreadable)."

[6] Even if the allegation were a judicial admission, it is within this Court's discretion to relieve a party of such admission. *See Wilda v. JLG Indus., Inc.*, 470 F.Supp.3d 770, 792 (N.D. Ill. 2020) (noting a district court "has the discretion to relieve a party of a judicial admission"); *Solon v. Gary Community School Corp.*, 180 F.3d 844, 858 (7th Cir. 1999) ("A judicial admission is conclusive, unless the court allows it to be withdrawn."). Defendants were on notice at least as of September 19, 2022 that Plaintiff had identified Officer Napoli as the Defendant who threatened him, nearly a year before filing the present motion, and Defendants' own filings make it clear they conducted discovery on the issue. Thus, they have suffered no prejudice, and even if this were a binding judicial admission, the Court, exercising its discretion, would decline to hold Plaintiff to the statement.

that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Id.* at 1048.

For purposes of this motion, Plaintiff has met his burden. First, as explained above, Plaintiff's case is closely analogous to *McDonald*, a case in which officers placed a gun to the head of a minor and threatened to shoot, despite there being no risk to the officers' safety or threat of violence from the minor. 966 F.2d at 294. Regardless, as in *Jacobs*, "it was clearly established" at the time of the search "that 'police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever.'" 215 F.3d at 774 (quoting *Clash*, 77 F.3d at 1048). Because no reasonable officer would believe that he had the right to put a gun to a handcuffed minor's head and threaten to pull the trigger under the circumstances presented here, the Court declines to grant summary judgment based upon a claim of qualified immunity.

### D. Failure to Intervene

Finally, Defendants move for summary judgment on any failure to intervene claim. As an initial matter, a failure to intervene claim must "rise and fall with the underlying constitutional violations. *Rivera v. Guevara*, 319 F.Supp.3d 1004, 1049 (N.D. Ill. 2018); *see also Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005) (citing *Fillmore v. Page*, 358 F.3d 496 (7th Cir. 2004)) ("In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation.").

Because the only underlying constitutional claim that survives in this case is Plaintiff's claim against Officer Napoli for excessive force, the only basis for a claim would be the failure to intervene in Officer Napoli's use of force against Plaintiff. But it is not clear that Plaintiff brings such a claim and, even if he did, Defendants argue that Plaintiff cannot prove any Defendant Officer "was aware of or had a realistic opportunity to intervene." [106] at 15. Plaintiff does not respond to Defendant's argument and has thus waived the issue. *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment.").

To the extent Plaintiff seeks to bring a failure to intervene claim against any of the Officer Defendants, the Court grants summary judgment on that claim.

## IV.    Conclusion

For the reasons explained above, the Court grants in part, and denies in part, Defendants' motion for summary judgment, [105].  The Court grants judgment in Defendants' favor on Count III in its entirety and on Count IV as to Defendants Marvin Bonnstetter, Michael Bertini, Wayne Frano, Jr., Nicholas Hertko, Ivan Ramos, Kevin Garcia, and Salvatore Reina.  Plaintiff may proceed on his excessive force claim (Count IV) against Defendant Officer Napoli only and only with regard to Napoli's alleged placing his gun against Plaintiff's head and threatening to pull the trigger.  The Court dismisses Count II with prejudice.

The parties shall submit a joint status report by February 11, 2026, proposing additional case management dates, including agreed trial dates in the second half of 2026; they shall also provide their estimate concerning the expected length of trial.

Dated: January 15, 2026

Entered:

John Robert Blakey
United States District Judge